

JENNER&BLOCK LLP

September 8, 2014

Stephen L. Ascher
Partner
Tel 212 891-1600
Fax 212 909-0868
sascher@jenner.com

**MEMO ENDORSED**



**BY ECF**
Honorable Katherine B. Forrest
United States District Court Judge
Daniel Patrick Moynihan
 United States Courthouse
500 Pearl Street, Room 730
New York, New York 10007-1312

Re: *Bank of New York Mellon v. WMC Mortgage, LLC, et al, L.L.C.*, No. 12-CV-7096 (KBF)

Dear Judge Forrest:

Pursuant to Local Rule 37.2 and your Honor's Individual Rule 2.F, we write on behalf of defendant WMC Mortgage, LLC ("WMC") to request an order compelling discovery in response to Requests 1-5 and 7 of subpoenas (Ex. A) served on (1) Glenview Master Fund II, LLC ("GMF"), a "directing certificateholder" who instructed the trustee Bank of New York Mellon (the "Trustee") to bring this lawsuit; and (2) Glenview Capital Management, LLC ("GCM"), GMF's manager (GMF and GCM are referred to collectively as "Glenview").[1]

As background, Glenview is a hedge fund that likely bought Trust-issued RMBS certificates at heavily discounted prices with a plan to instigate and profit from this lawsuit. *See* MBS 'Putback' Investors Target Big Issuers, published by *Asset Backed Alert*, dated February 24, 2012, available at http://www.abalert.com/headlines.php?hid=156068 (Ex. I) (naming Glenview as an entity "scouring the files of securitized home loans, in hopes of reaping rich profits by forcing mortgage-bond issuers to buy back faulty credits"). Glenview then hired a "forensic re-underwriter" to review the underlying loan files and to probe for potential breaches of WMC's representations and warranties. (Dkt. No. 32, Am. Compl. ¶ 50.) As part of that process, Glenview "remained in frequent communication with the Servicer concerning" allegedly "missing loan files." (*Id.* ¶ 46.) Glenview relayed its claimed findings to the Trustee (which admittedly had "not conducted any independent review of the facts asserted," (*id.* Ex. H, p. 2)) and directed the Trustee to make the repurchase requests of WMC. (*Id.* ¶¶ 7, 49.) When WMC did not repurchase the loans, Glenview gave "written direction" to the Trustee to file suit. (*Id.* ¶¶ 14 & 47-52.) The Amended Complaint repeatedly relies on information developed by the forensic re-underwriter under Glenview's direction (*id.* ¶¶ 7, 45, 47-51, 55-58), and on alleged industry practice. (*Id.* ¶¶ 24-28, 66.) And any recovery for the Trust will be distributed to certificateholders, including Glenview. In short, Glenview is the plaintiff in all but name.

---

[1] WMC served its subpoena on GMF on May 28, 2014. WMC served a substantively identical subpoena on GCM on June 26, 2014.

Because of Glenview's leading role in the events culminating with this lawsuit, WMC served its subpoenas on Glenview. Despite a protracted meet and confer process (detailed below), Glenview has refused to produce or log any of the subpoenaed documents, except for (1) communications between itself and the Trustee or the Servicer and (2) documents concerning the forensic re-underwriting. This offered production is largely symbolic because WMC can obtain the former communications directly from the Trustee and the Servicer and Glenview will doubtless withhold as privileged all documents concerning the forensic re-underwriting, as it has already done with respect to similar documents subpoenaed from the re-underwriters.[2]

Glenview refuses to produce anything more based on the contention that, because it is technically a third party, its documents are irrelevant and it should not be put to the burden. (*See* 6/20/2014 Letter from D. Levy to R. Aronson (Ex. B); 8/14/2014 Letter from D. Levy to S. Ascher (Ex. D).) In fact, the subpoenas seek documents that are relevant for at least the following purposes, which are explained in greater detail in the attached July 22 and August 22 letters to Glenview's counsel (Exs. C and E):

WMC's Prompt Notice Defense. Under the terms of the contract governing WMC's repurchase obligation, the Trustee must provide WMC with prompt notice of any discovered breach of the representations and warranties that materially and adversely affects the value of a mortgage loan. (Dkt. No. 32-1, Am. Compl. Ex. A § 7(a).) Requests 3 and 5 seek Glenview's communications' regarding the Trust or the Trust's loans with third parties, including Due Diligence Providers and other Certificateholders. These communications, which may address issues such as suspected or alleged loan breaches based upon the evaluation of information obtained from the Trustee, bear directly on WMC's contention that the Trustee did not give WMC "prompt notice." Indeed, the Amended Complaint alleges that the Trustee's first repurchase requests to WMC were based on a May 21, 2012 letter from Glenview. (*Id.* ¶¶ 7, 48 & Ex. D.) But that letter appears to be based on Glenview's (or its reunderwriter's) assessment of the very first report of information concerning the Trust's loans that the Trustee issued approximately five years earlier. (*See id.* Ex. D.) WMC has the right to discover Glenview communications which support WMC's contention that, as appears to be the case based upon Glenview's May 21, 2012 letter, the Trustee possessed information that put it on notice of suspected breaches long before the Trustee gave notice to WMC. Similarly, Request 4 seeks documents related to Glenview's (or any other party's) agreement to indemnify the Trust's expenses for bringing this lawsuit. As discussed above, the Amended Complaint alleges that this action was brought "at the direction of" Glenview. Determining the date of indemnification discussions may further inform WMC's prompt notice defense.[3]

---

[2] Glenview asserts attorney-client privilege over documents WMC subpoenaed from two independent "re-underwriters," claiming that those entities were "retained by Glenview's counsel to assist in an analysis of the alleged breaches of certain representations and warranties in the loans that are the subject of this action." (*See* Exs. F-1, F-2.) Glenview (not the re-underwriters) also provided a 583-page privilege log with respect to those documents.

[3] Some material related to Glenview's indemnification of the Trustee may be available from the Trustee (*e.g.*, the indemnification agreement itself). To the extent the Trustee produces such materials, WMC will

Materiality of Alleged Breaches and Potential Champerty Defense. Requests 1 and 2 seek information concerning (1) Glenview's decision to acquire RMBS certificates in the Trust, including Glenview's due diligence; analyses, projections, communications, and other documents concerning its investment rationale; and the date and price of each of Glenview's purchase(s) of Trust certificates; and (2) Glenview's investments in similar residential mortgage backed securitizations. These documents are relevant for at least three purposes. First, the discovery may bear on the prompt notice issue described above. Second, WMC has a right to test the Amended Complaint's allegations concerning the information that is purportedly material to RMBS investors. (*See* Dkt. No. 32, Am. Compl. ¶¶ 27-28 (alleging that investors rely on representations and warranties).) The pleading, filed at Glenview's direction, places these facts at issue. Therefore, WMC should be permitted to determine whether the investment decisions of Glenview, a sophisticated RMBS investor, were consistent with the Amended Complaint's allegations. Moreover, materiality of an alleged breach is an element of the Trustee's claims. Third, WMC has asserted an affirmative defense of champerty. At least one recent New York State case has been dismissed on these grounds. *Justinian Capital SPC v. WestLB AG,* 43 Misc. 3d 598, 599 (Sup. Ct., NY County 2014). WMC has the right to explore the circumstances of Glenview's investment(s) in the Trust to determine whether it was in fact champertous. Though Glenview's counsel recently asserted that Glenview's purchase of certificates was sufficiently large to qualify for a "safe harbor" under New York's champerty statute (Ex. H), WMC is entitled to test the validity of that assertion through discovery. Glenview's indemnification negotiations with the Trustee and other parties may also bear on Glenview's purpose(s) in acquiring its certificates, including whether the purpose was to force litigation.

Mitigation of Damages. Request 7 seeks documents detailing any payments Glenview has received as a result of their ownership of the certificates. Such documents go directly to the issue of whether Glenview's damages (and by extension, the Trust's) have been mitigated.

* * * *

In sum, Glenview cannot resist production of these categories of relevant documents on its claimed ground that such production would be "far too burdensome" an imposition on a "third-party to the action." (Ex. B.) Glenview was the force behind this suit and it will be a significant beneficiary of any recovery. Glenview is "not the quintessential innocent, disinterested bystander" who can reasonably ask to be shielded from any burden. *See First Am. Corp. v. Price Waterhouse LLP,* 184 F.R.D. 234 (S.D.N.Y. 1998) (requiring subpoenaed non-party to bear its own costs when it had a stake in the outcome of the litigation). To the contrary, "[a]ny failure to have anticipated that its involvement could lead to discovery obligations and expenditures on its own behalf, if there was such a failure, would have reflected an uncommon lack of foresight." *Chevron Corp. v. Donziger,* 2013 U.S. Dist. LEXIS 36353, 120-121 (S.D.N.Y. Mar. 15, 2013).

We have been unable to reach agreement on an appropriate scope of Glenview's production:

---

not pursue duplicative materials from Glenview. However, some documents such as Glenview's communications with other certificateholders will not be available from the Trustee.

Hon. Katherine B. Forrest
September 8, 2014
Page 4

- On June 10, 2014, Glenview served its responses and objections to WMC's first subpoena (Ex. G), and counsel for Glenview and WMC had an extended conversation regarding the scope of discovery. On June 20, 2014, Glenview sent a letter (Ex. B) reiterating its position: "Glenview will produce communications, if any, with BoNY related to the Trust, the Mortgage Loans, the Action, or WMC, as those terms are defined in the Subpoena." WMC objected that Glenview's proposed scope of production was unreasonably limited. (Ex. C.)
- On August 14, 2014, Glenview offered "productions of all non-privileged documents responsive to: (i) Request No. 3, to the extent it seeks communications with the Servicer or BoNY; and (ii) Request No. 6 [which seeks documents related to the forensic reunderwriting]." (Ex. D.) Glenview stood on its objections as to all other Requests.
- On August 22, 2014, WMC offered a compromise, wherein WMC would drop Requests 2 and 7 in exchange for Glenview's agreement to produce all documents responsive to Requests 1, 3-6.[4] (Ex. D.) Glenview rejected that compromise on August 29, 2014. (Ex. H.)

**Our attempts to reach agreement on a reasonable scope of production have been unsuccessful. Accordingly, we respectfully request that the Court: (1) compel production of any non-privileged documents responsive to Requests 1-5 and 7 of the Subpoena; and (2) order Glenview to create a privilege log listing any responsive documents withheld from production in accordance with Fed. R. Civ. P. 26(b)(5) and Local Rule 26.2.**

Respectfully submitted,

Stephen L. Ascher

cc: David M. Levy (counsel for Glenview and GCM) (via email and overnight mail) and counsel of record (via ecf)

*[Handwritten note:] Denied. See Home Equity, 2014 N.Y. Misc. Lexis 3441 (N.Y. Sup. Ct. 7/28/14). Any dispute regarding the privilege log may be raised after a log is produced, to the extent a dispute survives a meet and confer process. /s/ Katherine Forrest, Sept. 16, 2014*

---

[4] Glenview has asserted that it has no documents responsive to Request 8, so WMC does not seek to compel production in response to that Request at this time.