```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :   12cv7096 (DLC)
THE BANK OF NEW YORK MELLON, solely as   :
Trustee for GE-WMC Mortgage Securities   :      OPINION
Trust 2006-1,                            :      AND ORDER
                    Plaintiff,           :
                                         :
           -v-                           :
                                         :
WMC MORTGAGE, LLC, and GE MORTGAGE       :
HOLDING, L.L.C.,                         :
                    Defendants.          :
                                         :
---------------------------------------- X
```

APPEARANCES

For Plaintiff:
Motty Shulman
Ian M. Dumain
Evelyn N. Fruchter
Marc Ayala
Boies, Schiller & Flexner LLP
333 Main St.
New York, NY 10503

For Defendant WMC Mortgage, LLC:
Stephen L. Ascher
Jenner & Block LLP
919 Third Ave.
New York, NY 10022

Paul M. Smith
Matthew S. Hellman
Jenner & Block LLP
1099 New York Ave., NW
Washington, DC 20001

Barbara S. Steiner
Megan B. Poetzel
Jenner & Block LLP
353 N. Clark St.
Chicago, IL 60654

For Defendant GE Mortgage Holding, LLC:
Greg A. Danilow
Stacy Nettleton
Weil, Gotshal & Manges LLP
767 Fifth Ave.
New York, NY 10153

DENISE COTE, District Judge:

This action involves a breach of contract claim brought by Bank of New York Mellon ("BoNY") as the trustee ("Trustee") of a residential mortgage backed securities ("RMBS") trust. Defendant WMC Mortgage, LLC ("WMC"),[1] the sponsor of the securitization, originated or acquired the mortgage loans that are the subject of this lawsuit and sold the loans to co-defendant GE Mortgage Holdings, LLC ("GEMH"). GEMH then sold the loans to the depositor, GE-WMC Mortgage Securities, L.L.C. ("GE-WMC Securities"), who placed the loans into the trust. As part of the transfer of loans to the trust, the defendants made a number of contractual representations regarding the underlying mortgage loans. The primary claim raised in this lawsuit is a breach of contract claim against WMC for breaches of the contractual representations.

On March 17, 2015, the defendants moved for partial summary judgment on four of the seven counts in the complaint on the grounds that they are not recognized by New York law or are

---

[1] WMC Mortgage, LLC is the successor entity to WMC Mortgage Corp.

2

duplicative of the main breach of contract claim.  For the following reasons, the defendants' motion for summary judgment is granted.

## BACKGROUND

The following facts are undisputed.  The trust, GE-WMC Mortgage Securities Trust 2006-I ("Trust"), contains 4,654 residential mortgage loans originated or acquired by WMC.  The securitization of the loans placed into the Trust was accomplished through the execution of three documents in August 2006.  First, WMC, the sponsor of the securitization, sold these loans to GEMH on August 10, pursuant to a Mortgage Loan Purchase Agreement ("Originator MLPA").  GEMH then transferred the mortgage loans to GE-WMC Securities, the depositor, pursuant to a second contract, also dated August 10 ("Seller MLPA" or collectively "MLPAs").  GE-WMC Securities conveyed the mortgage loans to the Trust, with BoNY as the Trustee, pursuant to a Pooling and Servicing Agreement ("PSA"), dated as of August 1.  The closing date for the PSA was August 21, 2006.  The Trustee is not a party to either MLPA but has the right to enforce both contracts.

In the Originator MLPA, WMC made over 80 representations and warranties ("R&Ws") concerning the quality of the loans.  Originator MLPA § 7(a) requires WMC, upon "its discovery or receipt of notice" of a breach of the R&Ws, to "cure,"

3

"repurchase," or "substitute for" the defective loan. Similarly, Seller MLPA § 7(a) requires GEMH to cure, repurchase, or substitute for a defective loan if it discovers or receives notice of a breach of the R&Ws contained within the Originator MLPA.[2]  Under both MLPAs, any repurchase must be at a "price equal to the Purchase Price."  The Purchase Price is defined in PSA § 1.01 to include, <u>inter alia</u>, "expenses reasonably incurred by . . . the Trustee . . . in respect of the breach or defect giving rise to the purchase obligation."

Both MLPAs contain a separate indemnification provision. Originator MLPA § 4(e) provides that "any expense reasonably incurred by or on behalf of the . . . Trustee in connection with enforcing the obligations of [WMC] under this agreement shall be promptly reimbursed by [WMC]."  Seller MLPA § 4(e) provides for the same with respect to GEMH.

In the complaint, BoNY brings seven different claims.  Two relate to breaches of the R&Ws.[3]  BoNY also brings a claim based on the defendants' failure to notify BoNY of breaches of the

---

[2] Whether GEMH is a proper defendant in this action is the subject of a separate motion for summary judgment.  For the purposes of this motion, it is assumed without deciding that these claims may properly be maintained against GEMH.

[3] Count I is against WMC for breach of the R&Ws.  Count VI seeks a declaratory judgment against WMC and GEMH requiring the defendants to comply with their repurchase obligations.

4

R&Ws.[4]  Because the contractually-dictated time to substitute has long since passed, and because BoNY has never requested that the defendants cure any breaches of the R&Ws, the only contractual remedy at issue in this litigation is repurchase.  For loans on since-foreclosed properties for which the right to repurchase is unavailable, BoNY seeks monetary relief.  See Bank of New York Mellon v. WMC Mortgage, LLC, 12cv7096 (DLC), 2015 WL 2449313 (S.D.N.Y. May 22, 2015).

The remaining four claims are at issue in this motion.  Count II and III of the Complaint are against WMC and GEMH, respectively, for failure to repurchase mortgage loans.  In Count IV, BoNY alleges that "WMC has breached its Indemnification Obligation by failing to indemnify the Trustee and the Trusts for the expenses incurred by the Trustee in connection with the enforcement of the [R&Ws] and the Repurchase Obligation."  Count V makes the same allegation against GEMH.

WMC moved for summary judgment on Counts II and IV, and GEMH joined WMC's motion with respect to Counts III and V.

---

[4] Count VII is brought against both WMC and GEMH for failure to notify BoNY of breaches of the R&Ws.  This claim may be precluded by the New York Court of Appeals decision in ACE Sec. Corp. v. DB Structured Products, Inc., No. 85, 2015 WL 3616244 (N.Y. June 11, 2015).

5

**DISCUSSION**

Summary judgment may not be granted unless all of the submissions taken together "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party. Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008). The defendants have moved for summary judgment with respect to BoNY's breach of contract claims for failure to repurchase loans and indemnification claims. Each will be considered in turn.

**I. Failure to Repurchase**

The defendants move for summary judgment with respect to BoNY's claims based on the defendants' failure to repurchase defective loans. The defendants argue that, under New York law, a failure to comply with a presuit remedial provision like MLPAs § 7(a) does not give rise to a breach of contract claim independent of a claim for breaches of R&Ws. The defendants are correct.

"[T]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." In re Delta Air Lines, Inc., 608 F.3d

6

139, 146 (2d Cir. 2010) (citation omitted) (applying New York law).  The best evidence of what parties to a written agreement intend is what they say in their writing.  Id.  An agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.  Law Debenture Trust Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010) (applying New York law).

In interpreting a mortgage loan purchase agreement, the New York Court of Appeals recently held in ACE Sec. Corp. v. DB Structured Products, Inc., No. 85, 2015 WL 3616244 (N.Y. June 11, 2015),[5] that a presuit remedial provision is not a separately enforceable right that gives rise to a separate breach of contract claim.  The Court of Appeals found that the cure, repurchase, or substitution provision of the contract "was dependent on, and indeed derivative of, [the sponsor's] representations and warranties, which did not survive the closing and were breached, if at all, on that date."  Id.  The Court of Appeals concluded that the "cure or repurchase obligation" was "the Trust's sole remedy in the event of [a]

---

[5] The Court of Appeals decided Ace after briefing was complete in this case.  The decision, however, affirmed a substantial body of case law finding that New York law did not recognize an independent failure-to-repurchase claim.  Ace, 2015 WL 3616244, at *1 n.4.

7

breach of representations and warranties" and was not "an independently enforceable right."  Id.

BoNY makes no legal argument in support of the failure to repurchase claim against WMC, but asks this Court to preserve the claim for trial because it will not affect the scope of BoNY's claims or the evidence presented at trial.  As this claim is clearly precluded by Ace, summary judgment is granted in favor of the defendants with respect to Counts II and IV.

In opposition to GEMH's joinder of WMC's motion for summary judgment on this point, BoNY argues that summary judgment as it relates to GEMH is inappropriate because no precedent compels the dismissal of the claim.  BoNY is correct in asserting that prior case law addressing the viability of an independent failure to repurchase claim did not involve a securitization with two MLPAs where the R&Ws are contained in only one.  The modified structure of the securitization, however, does not convert a presuit remedy into an independently enforceable promise.  In the Seller MLPA, GEMH agreed that, upon notice or discovery of a breach of the R&Ws contained in the Originator MLPA, it would cure, repurchase, or substitute for the defective loan.  In doing so, GEMH adopted by reference the R&Ws made by WMC in the Originator MLPA and guaranteed that the loans conformed to the R&Ws.

8

The similarities between the MLPAs § 7(a) lend further support to the interpretation that Seller MLPA § 7(a), like Originator MLPA § 7(a), is a presuit remedy provision rather than an independently enforceable promise.  Seller MLPA § 7(a) exactly parallels Originator MLPA § 7(a).  Absent language indicating that these provisions should be interpreted differently, the two provisions should be given a consistent meaning.  Accordingly, summary judgment in GEMH's favor is appropriate because New York law does not recognize an independent failure to repurchase claim.

## II. Indemnification

Claims III and V relate the defendants' indemnification obligations under § 4(e) of the MLPAs.  The defendants move for summary judgment on the ground that these claims are duplicative of the main claim for breaches of the R&Ws.

Under New York law, "[t]wo claims are duplicative of one another if they arise from the same facts and do not allege distinct damages."  NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008) (citation omitted) (applying New York law); see also Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce, 894 N.Y.S.2d 47, 49-50 (App. Div. 2010) (dismissing breach of implied covenant of good faith and fair dealing as duplicative of the breach-of-contract claim because both arose from the same facts and sought identical

9

damages). "Where a claimant is entitled to a particular category of damages on one claim but not the other, the claims are not duplicative." NetJets Aviation, 537 F.3d at 175.

Applying these principles to the contract provisions at issue, the indemnification claims are duplicative of the claim for the breaches of R&Ws.[6] The two contract provisions at issue are the Purchase Price formula in PSA § 1.01, which extends to "expenses reasonably incurred by . . . the Trustee . . . in respect of the breach or defect giving rise to the purchase obligation," and MLPAs § 4(e), which provide for recovery of "any expense reasonably incurred by or on behalf of the . . . Trustee in connection with enforcing the obligations of [WMC or GEMH]." As a theoretical matter, MLPAs § 4(e) are facially broader than the indemnification provision contained Purchase Price formula.[7] But, in this case, they are not broader since the only indemnification sought by BoNY in the complaint is for

---

[6] While the main breach of R&Ws claim is only against WMC, BoNY also seeks a declaratory judgment against both WMC and GEMH that would require the defendants to comply with their repurchase obligations. To the extent that GEMH has any such obligations, it would be required as part of any declaratory judgment to repurchase loans at the Purchase Price.

[7] BoNY does not seek cure or substitution as a remedy for breach of the R&Ws in this case. The Trustee would be able to recover expenses incurred under MLPAs § 4(e) that would not be recoverable under the Purchase Price formula if the remedy chosen were cure or substitution as the Purchase Price formula relates only to the repurchase remedy.

expenses incurred while enforcing the repurchase obligation. The expenses incurred in connection with enforcing the R&Ws are "expenses reasonably incurred . . . in respect of the breach of defect" that leads to repurchase. Consequently, the indemnification claim and breach of R&Ws claim both arise from the same set of facts -- the breaches of the R&Ws -- and the indemnification sought is identical -- compensation for expenses reasonably incurred in enforcing the defendants' repurchase obligations. Accordingly, summary judgment is granted with respect to Claims IV and V.

BoNY makes four main arguments in opposition to the defendants' motion for summary judgment, all of which lack merit. First, BoNY contends that the question of whether the claims are duplicative is an issue of fact that cannot be decided at the summary judgment stage. The case BoNY cites in support of this proposition, <u>Common Fund for Non-profit Organizations v. KPMG Peat Marwick LLP</u>, No. 96cv0255 (MGC), 2000 WL 124819 (S.D.N.Y. Feb. 2, 2000), is readily distinguishable on this point. The defendants' motion for summary judgment presents straightforward questions of contract interpretation. These issues may be properly resolved now as a matter of law. <u>Fishoff v. Coty Inc.</u>, 634 F.3d 647, 652 (2d Cir. 2011).

Second, BoNY contends that MLPAs § 4(e) are facially broader than the indemnification provisions described in the

11

Purchase Price formula and interpreting them to be coextensive with the indemnification provided as part of the Purchase Price would render MLPAs § 4(e) meaningless.  While MLPAs § 4(e) are facially broader than the Purchase Price indemnification provision, as applied to the indemnification claims actually pleaded by BoNY in the complaint, the damages sought under MLPAs § 4(e) are coextensive with the damages described in the Purchase Price provision.  This does not render MLPAs § 4(e) superfluous; as explained above, there are circumstances where BoNY may recover expenses under MLPAs § 4(e) that would not be available as part of the Purchase Price formula.  BoNY has simply not pleaded a claim that implicates such circumstances.

Third, BoNY argues that the claims are not duplicative because MLPAs § 4(e) may extend to expenses incurred with respect to loans that BoNY reasonably believes to be in breach of the R&Ws but for which it cannot prove a defect at trial.  This argument fails.  MLPAs § 4(e) provide for recovery of "any expense reasonably incurred by or on behalf of the . . . Trustee in connection with enforcing the obligations of [WMC or GEMH]."  (Emphasis added.)  Under the plain meaning of MLPAs § 4(e), BoNY may only recover expenses where it enforces an obligation that exists.  The MLPAs do not allow for reimbursement in the event BoNY loses at trial.  See Gibbs-Alfano v. Burton, 281 F.3d 12, 19 (2d Cir. 2002) (noting that a contract assuming an

12

indemnification obligation "must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed").

Furthermore, the term "reasonable" modifies only "expenses." It limits BoNY's recovery to expenses that are "reasonable," that is, not excessive or unnecessary. The term "reasonably incurred" does not modify "obligations." BoNY's interpretation -- that MLPAs § 4(e) extend to expenses incurred "in connection with enforcing the obligations [BoNY reasonably believes to exist]" -- requires the addition of extra language into the contract provisions in violation of the plain meaning rule. Accordingly, such an interpretation must be rejected.

Finally, BoNY argues that the indemnification claims should not be dismissed because such a dismissal would not serve the interests of judicial economy. This argument is rejected.

## CONCLUSION

The defendants' March 17 motion for partial summary judgment is granted. Counts II through V are dismissed.


Dated:   New York, New York
         July 10, 2015

_____
DENISE COTE
United States District Judge

13