```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                          :
THE BANK OF NEW YORK MELLON, solely as    :    12cv7096 (DLC)
Trustee for GE-WMC Mortgage Securities    :
Trust 2006-1,                             :         OPINION
                       Plaintiff,         :        AND ORDER
                                          :
         -v-                              :
                                          :
WMC MORTGAGE, LLC, and GE MORTGAGE        :
HOLDING, L.L.C.,                          :
                       Defendants.        :
                                          :
---------------------------------------- X
```

APPEARANCES

For Plaintiff:
Motty Shulman
Ian M. Dumain
Evelyn N. Fruchter
Marc Ayala
Boies, Schiller & Flexner LLP
333 Main St.
New York, NY 10503

For Defendant WMC Mortgage, LLC:
Stephen L. Ascher
Jenner & Block LLP
919 Third Ave.
New York, NY 10022

Paul M. Smith
Matthew S. Hellman
Jenner & Block LLP
1099 New York Ave., NW
Washington, DC 20001

Barbara S. Steiner
Megan B. Poetzel
Jenner & Block LLP
353 N. Clark St.
Chicago, IL 60654

For GE Mortgage Holding, LLC:
Greg A. Danilow
Stacy Nettleton
Weil, Gotshal & Manges LLP
767 Fifth Ave.
New York, NY 10153

DENISE COTE, District Judge:

Defendant WMC Mortgage, LLC ("WMC") brings this motion for a jury trial pursuant to the Seventh Amendment of the U.S. Constitution, which guarantees the right to a jury trial for cases arising in law.  The underlying action consists principally of a breach of contract claim brought by Bank of New York Mellon as the trustee ("BoNY" or "Trustee") of a residential mortgage backed securities ("RMBS") trust against the entities that sponsored and arranged for the securitization, based on breaches of the representations and warranties that were made to describe the loans ("R&Ws") backing the securitization.  The governing contract provides for equitable remedies only, but BoNY has sought money damages where the equitable remedies are no longer available.  On May 22, 2015, this Court issued an Opinion finding that money damages were available in lieu of the equitable relief described in the contract.  Bank of New York Mellon v. WMC Mortgage, LLC, 12cv7096 (DLC), 2015 WL 2449313 (S.D.N.Y. May 22, 2015).  For the following reasons, WMC's motion for a jury trial is denied.

2

**BACKGROUND**

The trust, GE-WMC Mortgage Securities Trust 2006-I ("Trust"), contains 4,654 residential mortgage loans originated or acquired by WMC.  The Trust received the loans pursuant to a Pooling and Servicing Agreement ("PSA").  Upon discovery or receipt of notice of a breach of the R&WS, the PSA requires the Trustee to notify WMC, the sponsor of the securitization, who must then cure the breach, "substitute for" the defective loan, or repurchase the defective loan from the Trust within 90 days of receiving the notice.  This remedy constitutes the "sole remedy . . . available to the Trustee."

A separate contract, to which the Trustee is not a party but which it has the right to enforce, requires WMC to cure, repurchase, or substitute for a defective loan if it discovers or receives notice of a breach of the R&Ws.  This document, the Mortgage Loan Purchase Agreement ("MLPA"), requires WMC to repurchase defective loans at a "price equal to the Purchase Price."  The PSA includes a formula for calculating the Purchase Price.  According to this formula, the Purchase Price of some loans where the underlying property has been foreclosed upon will be zero.  Much like the PSA, the MLPA provides that the obligations of WMC to cure, repurchase, or substitute for a

3

defective loan "constitute the sole remedies of [the Trustee] against [WMC]."

From the time that the loans were transferred to the Trust, the servicer of the loans foreclosed on and sold a number of properties securing the mortgage loans.  The parties have not provided the percentage of loans at issue in this lawsuit where the underlying property was foreclosed upon, but it appears that as many as 1,829 loans may fall into this category.

BoNY commenced this suit on August 21, 2012 in state court. WMC removed the case to federal court on September 20, 2012, and BoNY amended its complaint on May 29, 2013 ("Complaint").  In the Complaint, BoNY requests a judgment against WMC in the form of "damages in an amount to be determined at trial, but in an amount that is not less than $378 million."

On September 6, the parties submitted a joint scheduling order form to the Honorable Katherine B. Forrest, to whom this action was then assigned ("Joint Scheduling Order").  The Joint Scheduling Order states that "Trial will be before a jury.  [To the extent permitted by the governing agreements]."  (Brackets in original.)  Having denied pending motions to dismiss, on September 13, Judge Forrest issued a scheduling order adopting the parties' Joint Scheduling Order.  The September 13

scheduling order states that trial will be before a jury to the extent permitted by the governing agreements.  This case was reassigned to this Court approximately one year later, on September 16, 2014.

On December 17, 2014, WMC filed a motion for partial summary judgment on the ground that BoNY's remedies were limited under the PSA and MLPA to repurchase, cure, or substitution, and that these equitable remedies were not available for loans that had already been liquidated due to foreclosure on the underlying property.  This Court held that where equitable relief was "impossible" or "impracticable," "money damages may be awarded in lieu of repurchase even where equitable relief is described as the 'sole remedy.'"  Bank of New York Mellon, 2015 WL 2449313, at *2.  As a consequence, the remedies for BoNY's claim based on breaches of the R&Ws differ based on the foreclosure status of the properties securing the loans.  First, for loans where the underlying properties have not been foreclosed upon, BoNY's remedies are limited to the equitable remedies described in the MLPA, namely repurchase, cure, or substitution.[1]  Second,

---

[1] The only remedy at issue here is the repurchase remedy. Substitution of a different mortgage loan is only available for two years following the contract's closing date, which has long since expired.  Nor has BoNY asked WMC to cure any breaches.

for loans that have been liquidated, BoNY may receive money

damages "in lieu of repurchase."  Id.

WMC filed the instant motion for a jury trial on March 17,

2015.  The motion was fully submitted on April 10.  A trial is

scheduled for September 21, 2015.

## DISCUSSION

BoNY brought seven claims in the Complaint.  Summary

judgment has been granted in favor of the defendants on four of

these claims.[2]  In the principal remaining claim, BoNY seeks to

enforce its contractual rights under the MLPA.[3]  The central

question presented by WMC's motion for a jury trial is whether

this claim arises in law or equity.  WMC argues that a breach of

contract claim where the plaintiff seeks money damages despite

the express prohibition in the governing contract is a "classic"

legal claim and gives WMC a right to a jury trial under the

---

[2] WMC argued that it is also entitled a jury trial on Count IV of
the Complaint, which is a claim for indemnification, but also
moved to dismiss Count IV.  As summary judgment has been entered
in WMC's favor on the claim, WMC's entitlement to a jury trial
on the issue presented in Count IV is not considered as part of
this motion.

[3] The other two remaining claims include a declaratory judgment
seeking to enforce the contract, and a claim for breach of
contract for failure to notify BoNY of breaches of the R&Ws.
The failure to notify claim may be barred by the recent New York
Court of Appeals decision in ACE Sec. Corp. v. DB Structured
Products, Inc., No. 85, 2015 WL 3616244 (N.Y. June 11, 2015).

Seventh Amendment.  BoNY contends that a breach of contract

claim, where the contract provides only for equitable relief, is

equitable in nature, and any damages awarded to afford complete

relief under the contract remain equitable in nature.

Equity developed in England after the emergence of the

common law system as a means of resolving disputes where an

unusual set of facts did not conform to the writs used to

initiate a common law action in the courts of law.  1 Dan B.

Dobbs, Law of Remedies § 2.2, at 67 (2d ed. 1993).  Over time,

suits in equity were brought before the King's Chancellor.  By

the fifteenth century, there was a dual system of common law

courts and chancery courts of equity.  Id. § 2.2, at 72.  The

"[l]aw courts were physically and historically separate from

equity courts, staffed by different judges from different

intellectual traditions."  3 Dobbs, supra, § 12.8(2), at 201.

In the United States, the Judiciary Act of 1789 conferred

on federal courts jurisdiction over "all suits of a civil nature

at common law or in equity" where there is subject matter

jurisdiction.  1 Stat. 78 (1789).  The jurisdiction conferred

therefore included the "authority to administer in equity suits

the principles of the system of judicial remedies which had been

devised and was being administered by the English Court of

Chancery at the time of the separation of the two countries."
Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.,
527 U.S. 308, 318 (1999) (citation omitted).

     In the nineteenth century, both the United States and
England adopted procedural reforms that created one form of
action, the civil action.  1 Dobbs, supra, § 2.6(1), at 148.
These reforms are referred to as the merger of law and equity.
Id.  Before the merger, federal courts exercised powers in both
equity and law but operated by "distinctly separating equity
cases and [using] separate equity rules."  Id. § 2.6(1) at 148
n.2.  Only with the adoption of the Federal Rules of Civil
Procedure in 1938 did this separation end in federal courts.
Id.  Under the Federal Rules, a party may join legal and
equitable claims in a single action.  Dairy Queen, Inc. v. Wood,
369 U.S. 469, 471 (1962).

     The Seventh Amendment guarantees the right to a trial by
jury "in Suits at common law."  U.S. Const. amend. VII.
"Although the thrust of the Amendment was to preserve the right
to jury trial as it existed in 1791, it has long been settled
that the right extends beyond the common-law forms of action
recognized at that time."  Curtis v. Loether, 415 U.S. 189, 193
(1974).  "The phrase 'Suits at common law' refers to suits in

8

which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered."  Eberhard v. Marcu, 530 F.3d 122, 135 (2d Cir. 2008) (citation omitted).

In Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989), the Supreme Court set forth a two-part test to determine whether a private action is a "suit at common law."  Eberhard, 530 F.3d at 135.  The first step is to determine whether the action was a legal or equitable action in eighteenth-century England. Granfinanciera, 492 U.S. at 42.  The second, which is weighed more heavily than the first, analyzes whether the remedy being sought is "legal or equitable in nature."  Id.

When an action presents both legal and equitable claims, the plaintiff is entitled to a jury trial on the legal claims. Dairy Queen, 369 U.S. at 472-73.  This right cannot be denied by characterizing legal claims as merely "incidental to" equitable issues.  Curtis, 415 U.S. at 196 n.11; Dairy Queen, 369 U.S. at 470.  Moreover, "the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings."  Dairy Queen, 369 U.S. at 477-78.  If a "legal claim is joined with an equitable claim, the right to a jury trial on

the legal claim, including all issues common to both claims, remains intact." Curtis, 415 U.S. at 196 n.11.

Turning to the first Granfinanciera prong, the Court finds that this action would have been brought before a court of equity in 1791.[4]  In eighteenth-century England, the writ of assumpsit was used to redress contract claims seeking money damages.  1 Dobbs, supra, §§ 4.2(1), 4.2(3) (describing the development of the writ of assumpsit as a vehicle for enforcing ordinary contracts).  Assumpsit was an action at law.  See id. § 4.2(1), at 571 (describing assumpsit as a writ at "common law"); see also Great-W. Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213 (2002); Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n, 430 U.S. 442, 459 (1977); 8 Moore's Federal Practice § 38.10(2)(c) (Matthew Bender 3d ed.).  By contrast, an action for specific performance would have been brought before a court of equity.  See Atlas Roofing, 430 U.S. at 459 ("[S]pecific performance was a remedy unavailable in a court of law . . . ."); see also 8 Moore's Federal Practice, supra, § 38.10(3); 3 Dobbs, supra, § 12.8, at 191.  In some circumstances, where an action was brought for specific

---

[4] The parties did not address in their briefing the Granfinanciera test or eighteenth-century jurisprudence.

performance, the English Court of Chancery would award money

damages as a substitute for equitable relief.  See Fleming

James, Jr., Right to A Jury Trial in Civil Actions, 72 Yale L.J.

655, 659 n.27, 672-73, 677 (1963).

There is no dispute that the remedies described in the MLPA

and PSA as BoNY's "sole remedies" for breaches of the R&Ws are

equitable in nature, and the Complaint brings a breach of

contract claim seeking to enforce these remedies.  A claim

relating to the breach of R&Ws is thus a claim for specific

performance, and would have been enforced in a court of equity

in the eighteenth century.  Atlas Roofing, 430 U.S. at 459.  The

conclusion that such an action arises in equity is not altered

by the fact that BoNY framed its claim as one for damages; the

right to a jury trial does not turn on the form of the

complaint.  Dairy Queen, 369 U.S. at 477-78.

Because the Seventh Amendment "preserve[s] the right to a

jury trial as it existed in 1791," Curtis, 415 U.S. at 193, it

may be unnecessary to discuss the second prong of the

Granfinanciera analysis in those instances in which the claim

existed in 1791 and the historical record makes it clear that

the action would have been brought in law or equity in

eighteenth-century England.  After all, the Granfinanciera test

11

was developed in the context of a statutory claim.  492 U.S. at 23.

As a breach of contract claim seeking specific performance existed in 1791 and could only have been brought in a court of equity, the first Granfinanciera prong could be viewed as dispositive.  But, as at least one commentator has noted, American equitable courts expanded the concept of substituted relief (when specific performance was unavailable) beyond what was permitted in eighteenth-century England.  James, supra, at 677; see also Edward Yorio, Contract Enforcement: Specific Performance and Injunctions §§ 19.1-19.3.  For this additional reason, it is appropriate to complete the Granfinanciera analysis.

The second Granfinanciera factor asks whether the remedy sought is legal or equitable.  The remedy sought by BoNY is equitable.  As the Court of Appeals for the Sixth Circuit observed in Golden v. Kelsey-Hayes Co., 73 F.3d 648, 661 (6th Cir. 1996), a monetary award can be an equitable remedy even though it is generally a form of legal relief.  See generally Restatement §§ 346-56.  The Supreme Court itself has recognized that not every "award of monetary relief must necessarily be 'legal' relief."  Chauffeurs, Teamsters & Helpers, Local No. 391

v. Terry, 494 U.S. 558, 570 (1990) (citation omitted).  It is

well established that "equitable relief includes monetary

damages where required to afford complete relief."  Restatement

§ 358(3); see also Tull v. United States, 481 U.S. 412, 424

(1987).

Accordingly, while every legal issue affords a party the

right to a jury trial on that issue even if the legal issue is

incidental to equitable claims, "a monetary award incidental to

or intertwined with injunctive relief may be equitable."  Terry,

494 U.S. at 571 (citation omitted).  "A court does not err in

denying a jury trial where the monetary award sought is

incidental to, or intertwined with, equitable relief.  It does

err when it denies a jury trial because of its determination

that legal issues in the case are merely incidental to equitable

ones."  Golden, 73 F.3d at 661; see also Entergy Arkansas, Inc.

v. Nebraska, 358 F.3d 528, 546 (8th Cir. 2004).

The Court of Appeals for the Second Circuit recognized the

distinction between legal issues incidental to equitable ones

and monetary relief incidental to equitable relief in Crane Co.

v. Am. Standard, Inc., 490 F.2d 332 (2d Cir. 1973).  Holding

that a defendant's Seventh Amendment right was not violated when

a judge awarded damages following a bench trial rather than an

injunction, the Second Circuit distinguished cases

> where the question of the proper order for trying
> jury and non-jury issues arises before any trial has
> occurred, as in . . . Dairy Queen . . . [from] those
> where the action has been properly tried to a judge
> and damages enter the case only because defendant's
> acts subsequent to the judgment require
> retrospective relief, possibly including damages,
> rather than the prospective relief initially sought.

Id. at 341-42.  The Second Circuit further noted that the

unavailability of equitable relief as a result of the occurrence

of the event sought to be enjoined would not "transform what had

been a suit in equity into one at least partially at law simply

because the chancellor might determine monetary relief to be a

more appropriate remedy than a retrospective injunction."  Id.

at 342.

Applying these principles to the breach of contract claim

here, it seeks an equitable remedy notwithstanding BoNY's

request for damages.  There is no dispute that the remedies

described in the MLPA and PSA as BoNY's "sole remedies" are

equitable.  The breach of contract claim is based on breaches of

the R&Ws in the MLPA.  The fact that equity permits damages to

be awarded where the specific equitable relief described by the

contract is not available -- where the loans have been

liquidated -- does not convert the otherwise equitable action to

14

an action at law.  See id.  Damages in such circumstances are

"exactly the type of monetary relief that courts . . . envision

as equitable relief; they are incidental to the grant of

equitable relief, yet are necessary to afford complete relief."

Entergy Arkansas, 358 F.3d at 546 (citation omitted).

WMC presents three main arguments in support of its motion

for a jury trial on this claim.  Each is unavailing.  First, WMC

argues that BoNY seeks money damages and any claim for such

damages is by nature legal.  It is true that BoNY framed its

claim as one for damages rather than specific performance, and

that contract actions for damages are historically (and in

modern practice) legal in nature.  As discussed above, however,

the right to a jury trial does not depend on the form of the

complaint.  Dairy Queen, 369 U.S. at 477-78.  A plaintiff cannot

secure for itself the right to a jury trial by framing a claim

to enforce equitable remedies as one for damages; nor could a

plaintiff eliminate a defendant's right a jury trial by framing

a legal claim as one for specific performance.  A nominal claim

for specific performance will not preclude a defendant's right

to a jury trial if the claim seeks legal damages.  But, here,

the Complaint seeks enforcement of a contract providing for only

an equitable remedy and only seeks damages on that cause of

15

action.   An award of such damages is properly regarded as

equitable in nature.[5]  Golden, 73 F.3d at 661.

Second, WMC contends that case law establishing that a

court of equity may award monetary relief is inapplicable

because that case law predated the merger of law and equity in

federal courts and is premised on the existence of the arguably

defunct "clean up" doctrine.  The clean-up rule allowed courts

in equity to assume "incidental" jurisdiction to "decide all

issues in a case, including legal issues, once they had taken

jurisdiction to decide the equitable issues."  See 1 Dobbs,

supra, § 2.6(4), at 169.  It is unclear whether the clean-up

rule survived the merger of law and equity.  See, e.g., Crane,

490 F.2d at 341-42.  But, the cases describing monetary

compensation as "equitable" where such compensation is

incidental to equitable relief do not turn on the existence of

the clean-up rule -- and, in any event, they post-date the

merger of law and equity.  See Entergy Arkansas, 358 F.3d at

546; Golden, 73 F.3d at 661; Crane, 490 F.2d at 341-42.

---

[5] It is worth observing that WMC and its affiliates drafted the
MLPA.  There can be no unfairness, therefore, in relying on that
contract's terms to define the nature of the remedy available to
the parties seeking to enforce its terms, and by extension, to
answer the inquiry posed by Granfinanciera.

16

Finally, WMC argues that the claim for money damages cannot be incidental because the number of loans where equitable relief is no longer available is substantial in comparison to the number of loans where equitable relief is still available. Whether a single property was foreclosed upon, or many were, should not affect the determination of the nature of the remedy and the right to a jury trial.  Rather, it is the presence of any legal issue, no matter how incidental, that would afford WMC the right to a jury trial.  BoNY presents a claim for specific performance of WMC's repurchase obligation and requests a monetary award where such relief is unavailable.  The need for a substituted remedy does not convert what would otherwise be an equitable claim into a legal one.

The plaintiff's claim, therefore, would have been brought in an equity court in eighteenth-century England and seeks an equitable remedy.  Accordingly, WMC is not entitled to a jury trial based on BoNY's claim for breaches of the R&Ws.

**CONCLUSION**

WMC's March 17 motion for a jury trial is denied.

Dated:    New York, New York
          July 10, 2015

_____
DENISE COTE
United States District Judge