UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :   12cv7096 (DLC)
THE BANK OF NEW YORK MELLON, solely as :
Trustee for GE-WMC Mortgage Securities :     OPINION AND
Trust 2006-1,                          :        ORDER
                    Plaintiff,         :
                                       :
              -v-                      :
                                       :
WMC MORTGAGE, LLC, and GE MORTGAGE     :
HOLDING, L.L.C.,                       :
                    Defendants.        :
                                       :
-------------------------------------- X

APPEARANCES

For Plaintiff:
Motty Shulman
Ian M. Dumain
Evelyn N. Fruchter
Marc Ayala
Boies, Schiller & Flexner LLP
333 Main St.
New York, NY 10503

For Defendant GE Mortgage Holding, LLC:
Greg A. Danilow
Stacy Nettleton
Weil, Gotshal & Manges LLP
767 Fifth Ave.
New York, NY 10153

DENISE COTE, District Judge:

        This action involves a breach of contract claim brought by

Bank of New York Mellon ("BoNY") as the trustee ("Trustee") of a

residential mortgage backed securities ("RMBS") trust.

Defendant WMC Mortgage, LLC ("WMC"),[1] the sponsor of the

_____

[1] WMC Mortgage, LLC is the successor entity to WMC Mortgage Corp.

securitization, originated or acquired the mortgage loans that are the subject of this lawsuit and sold the loans to co-defendant GE Mortgage Holdings, LLC ("GEMH").  GEMH then sold the loans to the depositor, GE-WMC Mortgage Securities, L.L.C. ("the Depositor"), which placed the loans into the trust.  As part of the transfer of loans to the trust, WMC made a number of contractual representations regarding the underlying mortgage loans.  In this lawsuit, the Trustee asserts that both defendants are liable for the breaches of the contractual representations.

GEMH moved for summary judgment on the ground that the Trustee's sole remedy for breaches of the contractual representations at issue here is its claim against WMC.  The primary legal issue raised by GEMH's motion -- whether the Trustee may seek the remedy of repurchase against GEMH -- has already been addressed in an Opinion by the Honorable Katherine B. Forrest, to whom this action was then assigned.  Bank of New York Mellon v. WMC Mortgage, LLC, No. 12cv7096 (KBF) (S.D.N.Y. Jan. 1, 2014) ("January 2014 Opinion").  For the following reasons, GEMH's motion for summary judgment is denied.

BACKGROUND

The following facts are undisputed or taken in the light most favorable to the non-moving party.  The RMBS industry was a major economic force in 2006 when the securitization at issue in

this action occurred.  RMBS certificates are financial instruments backed by hundreds or thousands of individual residential mortgages.  The usual process for creating a securitization may be summarized as follows:  First, originators issue the mortgage loans, typically in accordance with the originator's underwriting guidelines.  Next, loans are sold to a sponsor.  Sponsors purchase loans from originators or loan aggregators, a transaction that is generally governed by a Mortgage Loan Purchase Agreement which contains representations and warranties.  The sponsor holds title to the loans before they are transferred to the RMBS depositor.  Sponsors select loans from among those on its books, place the selected loans into groups for securitization, and sell them to depositors, typically a sponsor's affiliate.

Depositors are essentially shell corporations that exist for one purpose: to purchase the loans from the sponsor and deposit them in a trust.  The depositor establishes a trust and deposits the loans into the trust in exchange for certificates. The depositor also issues Registration Statements, Prospectus Supplements, and other offering documents for the securitization.  The RMBS trusts created by depositors are typically established pursuant to a Pooling and Servicing Agreement.  The trustee for each trust is generally responsible for maintaining custody of operative documents related to the

mortgage loans, receiving the cash flows each month from the entities servicing the loans, and allocating the cash flows to the certificate-holders and others pursuant to the rules laid out in the Pooling and Servicing Agreement.

Two aspects of the securitization here deserve particular mention.  First, WMC, the sponsor of the securitization, also originated many of the mortgage loans.[2]  Second, instead of transferring the loans directly to the Depositor, WMC transferred the loans to its affiliate GEMH.  GEMH is described in the transaction documents as the "mortgage loan seller."  The securitization accordingly involves two Mortgage Loan Purchase Agreements, the first between WMC and GEMH, which is referred to as the "Originator MLPA," and the second between GEMH and the Depositor, which is referred to as the "Seller MLPA."

The trust, GE-WMC Mortgage Securities Trust 2006-I ("Trust"), created by the securitization in this case, contains 4,654 residential mortgage loans originated or acquired by WMC. The securitization of the loans placed into the Trust was accomplished through the execution of three documents in August 2006.  First, WMC, the sponsor of the securitization, sold these loans to GEMH on August 10, pursuant to the Originator MLPA.

---

[2] The Prospectus Supplement represents that WMC reunderwrote pursuant to its own underwriting guidelines any of the mortgage loans in this securitization that it purchased from other originators.

GEMH simultaneously transferred the mortgage loans to the Depositor pursuant to the Seller MLPA, also dated August 10. The Depositor conveyed the mortgage loans to the Trust, with BoNY as the Trustee, pursuant to the Pooling and Servicing Agreement, dated as of August 1 ("PSA").  The closing date for the PSA was August 21, 2006.  The Trustee is not a party to either MLPA, but is a party to the PSA.

WMC and GEMH are the parties to the Originator MLPA.  In Sections Five and Six of the Originator MLPA, WMC made over eighty representations and warranties ("R&Ws") to GEMH concerning the quality of the loans.  WMC also assumed an obligation to repurchase loans that do not conform to those R&Ws.  Originator MLPA § 7(a) requires WMC, upon "its discovery or receipt of notice" of a breach of the R&Ws, to "cure," "repurchase," or "substitute for" the defective loan and states that any repurchase will be made in a "manner consistent with Section 2.03 of the [PSA]."

The Seller MLPA is a contract between GEMH and the Depositor.  In Section Five of the Seller MLPA, GEMH made fourteen additional R&Ws regarding GEMH's ability to transfer the mortgage loans and perform its obligations under the Seller MLPA.  For example, GEMH represented and warranted that it "has the full power and authority to hold each Mortgage Loan, to sell each Mortgage Loan, and to execute, deliver, and perform, and to

enter into and consummate, all transactions contemplated by" the
Seller MLPA.  Although GEMH did not make additional R&Ws
regarding the quality of the mortgage loans in Section Six of
the Seller MLPA, GEMH "assign[ed] all of its rights under the
[Originator MLPA] including the representations and warranties
with respect to the Mortgage Loans and the repurchase
obligations of WMC contained therein."

In Section Seven of the Seller MLPA, GEMH undertook a
repurchase obligation based on both the R&Ws made by GEMH in the
Seller MLPA as well as the R&Ws made by WMC in the Originator
MLPA.  This commitment is central to the Trustee's claims here.
Seller MLPA § 7(a) states that:

> Upon discovery by [GEMH], [the Depositor], or any
> assignee, transferee or designee of [the Depositor]
> . . . of a breach of any of the [R&Ws] contained in
> Section Five of Six or the [Originator MLPA] . . . the
> party discovering the breach shall give prompt written
> notice to the other.  Within ninety (90) days of its
> discovery or its receipt of notice of . . . any such
> breach of a [R&W] . . . [GEMH] shall . . . cure such
> defect or breach[,] . . . repurchase the affected
> Mortgage Loan . . . or . . . substitute [for] [the
> affected loan].

(Emphasis added.)[3]

---

[3] Originator MLPA § 7(a) contains similar language regarding the
need for either discovery or notice of a breach of R&Ws in order
to trigger the repurchase obligation.  It may be more difficult
for the Trustee to prove at trial that GEMH discovered the
breaches of the Originator's R&Ws or had the requisite notice
than it will be to show that WMC discovered them.

Seller MLPA § 7(b) clarifies the limitations of GEMH's liability for breaches of the R&Ws contained in both MLPAs. It lists the "sole" remedies available to the Depositor or its assignee.  Seller MLPA § 7(b) provides:

> It is understood and agreed that the obligations of [GEMH] . . . to cure, . . . repurchase or substitute for a defective Mortgage Loan constitute the sole remedies of [the Depositor] against [GEMH] respecting . . . a breach of the [R&Ws] contained in [the Seller MLPA] or Sections Five or Six of [the Originator MLPA].

(Emphasis added.)

The right to enforce the R&Ws contained in the Originator and Seller MLPAs was ultimately transferred to the Trustee.  WMC initially made the R&Ws contained in the Originator MLPA to GEMH.  In the Seller MLPA, GEMH sold the mortgage loans to the Depositor and, in Section Six of the Seller MLPA, transferred its rights to enforce the R&Ws contained in the Originator MLPA to the Depositor.  The Depositor subsequently assigned its right to enforce the repurchase obligations under both MLPAs to the Trustee in Section 2.01 of the PSA.  Section 2.01 provides:

> [The Depositor] . . . does hereby transfer, assign, set over and otherwise convey to the Trustee . . . all the right, title and interest of [the Depositor], including . . . the rights of [the Depositor] under the Mortgage Loan Purchase Agreements including, without limitation, [the Depositor's] right in the [R&Ws] and the repurchase obligations of [WMC] and [GEMH] contained therein) . . . .

(Emphasis added.)

As noted, the PSA is the only contract at issue here to which the Trustee is a party.  The Trustee accordingly derives its rights and obligations through the PSA, including the assignment of rights contained in PSA § 2.01.

PSA § 2.03 is entitled "Repurchase or Substitution of Mortgage Loans by [WMC], [GEMH] or the Depositor."  PSA § 2.03 contains three subsections.  The first, PSA § 2.03(a), describes the process and mechanics by which a loan that is in breach of the Originator's R&Ws may be repurchased.  The second subsection, PSA § 2.03(b), describes the obligations of the servicer of the mortgage loans to cure defects in mortgage loans.  The third, PSA § 2.03(c), describes in detail the process by which a loan may be substituted.

It is a sentence in PSA § 2.03(a) on which GEMH principally relies in bringing this motion.  The sentence states that WMC's obligations to cure, repurchase, or substitute for a loan as to which a breach has occurred are the "sole" remedies available to the Trustee.  In relevant part, PSA § 2.03(a) states:

> Upon discovery or receipt of notice . . . of the breach by [WMC] of any representation, warranty or covenant under the related Mortgage Loan Purchase Agreement in respect of any Mortgage Loan which materially adversely affects the value of such Mortgage Loan or the interest therein of the Certificateholders, the Trustee shall promptly notify [WMC] . . . of such defect, missing document or breach and request that [WMC] deliver such missing document or cure such defect or breach within 90 days from the date [WMC] had knowledge or was notified of such

8

missing document, defect or breach, and if [WMC] does not deliver such missing document or cure such defect or breach in all material respects during such period, the Trustee shall enforce the obligations of [WMC] under the related Mortgage Loan Purchase Agreement to repurchase such Mortgage Loan . . . within 90 days . . ., <u>if and to the extent that [GEMH] or [WMC] is obligated to do so under the related Mortgage Loan Purchase Agreement</u> . . . .   The Purchase Price for the repurchased Mortgage Loan shall be deposited in the Collection Account, and the Trustee . . . shall release to the Originator the related Mortgage File and shall request the Trustee to . . . execute and deliver such instruments of transfer or assignment . . . and the Trustee shall not have any further responsibility with regard to such Mortgage File.  In lieu of repurchasing any such Mortgage Loan as provided above, if so provided in the related Mortgage Loan Purchase Agreement, [WMC] may cause such Mortgage Loan to be removed from [the Trust] . . . and substitute one or more Qualified Substitute Mortgage Loans in the manner and subject to the limitations set forth in Section 2.03(c).  It is understood and agreed that <u>the obligation of [WMC]</u> to cure or to repurchase (or to substitute for) any Mortgage Loan . . . as to which a breach described above has occurred and is continuing shall . . . <u>shall constitute the sole remedy respecting such . . . breach</u> available to the Trustee on behalf of the Certificateholders.

(Emphasis added.)

PSA § 2.03(c) describes the mechanics of substituting for a mortgage loan.  PSA § 2.03(c) refers repeatedly to GEMH's obligations, including with respect to breaches of the Originator's R&Ws.  One illustrative paragraph provides, in relevant part:

Upon discovery . . . that any Mortgage Loan does not constitute a "qualified mortgage"[4] . . . , the party

---

[4] In the Originator MLPA, WMC represented and warranted that "[e]ach Mortgage Loan constitutes a 'qualified mortgage' under

9

discovering such fact shall within two Business Days give written notice thereof to the other parties.  In connection therewith, <u>[WMC], [GEMH] or [the Depositor] shall repurchase</u> . . . the affected Mortgage Loan within 90 days of the earlier of discovery or receipt of such notice with respect to such affected Mortgage Loan.  <u>Such repurchase or substitution shall be made by [WMC]</u>.  Any such repurchase or substitution shall be made in the same manner as set forth in Section 2.03(a).  <u>The Trustee shall reconvey to [the Depositor], [GEMH] or [WMC]</u>, as the case may be, the Mortgage Loan to be released pursuant hereto in the same manner, and on the same terms and conditions, as it would a Mortgage Loan repurchased for breach of a representation or warranty.

(Emphasis added.)

Through the MLPAs and the PSA, the loans originated or acquired by WMC were bundled and placed into a trust in order to securitize them.  The offering documents for the securitization included a Prospectus, dated August 9, 2006, and a Prospectus Supplement dated August 10, 2006.  The Prospectus and Prospectus Supplement describe the structure of the securitization and risks for investors.

Two provisions of the Prospectus are of particular relevance here.  The first provision is entitled "Representations by or on Behalf of Mortgage Loan Sellers; Remedies for Breach of Representation."  ("Prospectus Passage").  The Prospectus Passage states, <u>inter alia</u>, that "[e]ach mortgage loan seller . . . will have made representations and warranties

---

Section 860G(a)(3)(A) of the [Internal Revenue] Code and Treasury Regulation Section l.860G-2(a)(l)."

in respect of the mortgage loans sold by that mortgage loan seller." (The Prospectus Supplement identifies GEMH as the mortgage loan seller.) The Prospectus Passage then lists seven R&Ws that "will be made by . . . each mortgage loan seller." The seven R&Ws overlap with the R&Ws made in the Originator MLPA. The Prospectus Passage further describes the repurchase obligation twice:

> In the event of a breach of any representation or warranty made by <u>a mortgage loan seller</u>, the mortgage loan seller will be obligated to cure the breach or repurchase or replace the affected mortgage loan . . . .
>
> The servicer, . . . or the trustee, will promptly notify the <u>relevant mortgage loan seller</u> of any breach of any [R&W] . . . . If the mortgage loan seller cannot cure a breach . . . then the mortgage loan seller will be obligated to repurchase the affected mortgage loan from the trustee . . . . This repurchase or substitution obligation will constitute the sole remedy available to the holders of securities or the trustee for a breach of representation by <u>a mortgage loan seller</u>.

(Emphasis added.)

A later section of the Prospectus, entitled "Representations and Warranties; Repurchases," again describes the mortgage loan sellers' R&Ws and repurchase obligations. This section also provides additional information regarding the mortgage loan sellers' right to substitute rather than repurchase, stating:

> [T]he mortgage loan seller will make [R&Ws] as of a specified date, covering, by way of example, [matters related to the type and quality of loan].

11

> Upon a breach of any representation . . . the depositor will be obligated to cause the mortgage loan seller to cure . . ., repurchase the mortgage asset . . . or substitute for that mortgage asset . . . .
>
> If the depositor discovers or receives notice of any breach of the [R&Ws] . . . the mortgage loan seller may be permitted . . . to remove the mortgage asset from the trust fund, rather than repurchase the mortgage asset . . . .

The section also notes that: "The obligation to repurchase, or . . . to substitute mortgage loans constitutes the sole remedy available to the securityholder or the trustee for any breach of the representations."

The Prospectus Supplement was issued the day after the Prospectus and provides additional clarity for investors.  As already noted, it identifies the mortgage loan seller as GEMH. In its opening summary, the Prospectus Supplement describes the remedies for breaches of the R&Ws, stating: "[WMC] will make certain [R&Ws] with respect to each mortgage loan. . . .  Upon discovery of a breach of such [R&Ws], [WMC] will be obligated to . . . repurchase . . . such mortgage loan."  This paragraph does not make any specific reference to GEMH, but directs the reader to the Prospectus Passage.

The Prospectus Supplement later provides a more detailed description of the PSA.  The Prospectus Supplement's description of the PSA's remedies for breaches of R&Ws again describes WMC's repurchase obligations without specific reference to GEMH, but refers the reader to the Prospectus Passage.

12

The Prospectus Supplement also describes possible risks for investors.  The Prospectus Supplement cautions investors that "[GEMH] and [WMC] each will have made various representations and warranties related to the mortgage loans. . . .  [GEMH] and [WMC] may not be able to repurchase defective mortgage loans; collections on the mortgage loans may be delayed or reduced if [GEMH] or [WMC] becomes insolvent."  The Prospectus Supplement further states that "[i]f [GEMH] or [WMC] fails to cure a material breach of its [R&Ws] . . . then [GEMH] or [WMC] would be required to repurchase, or substitute for, the defective mortgage loan."

The Trustee sent at least four letters demanding the repurchase of loans that breached the R&Ws contained in the Originator MLPA.[5]  The Trustee first sent a letter in September 2009 to WMC.[6]  The Trustee sent three additional repurchase requests to both GEMH and WMC on May 21, August 20, and August 21, 2012.

---

[5] Additional repurchase requests were also sent to GEMH for breaches of the R&Ws GEMH independently made in the Seller MLPA.

[6] A repurchase request was also sent by letter to the Trustee on March 17, 2008.  WMC is copied on the letter.  The letter was sent by an employee at Litton Loan Servicing, the servicer of the mortgage loans, at the direction of an entity called "C-Bass."  There is no indication in the evidence submitted that the Trustee took any additional steps after receiving this letter.

GEMH brings this motion for summary judgment on the ground that PSA § 2.03(a), which describes the Trustee's "sole remedy" for breaches of the R&Ws as being against WMC, precludes the Trustee from pursuing a remedy against GEMH for a breach of the R&Ws made by WMC in the Originator MLPA.  This argument was the subject of a motion pursuant to Federal Rule of Civil Procedure 12(c).  In denying GEMH's motion, the January 2014 Opinion concluded that the Originator MPLA, Seller MLPA, and PSA must be read together.  The January 2014 Opinion further noted that GEMH's interpretation of the PSA was "in tension" with the MLPAs and "the PSA itself -- specifically the assignment of rights by [the Depositor] in Section 2.01, the title of Section 2.03, the reference to [GEMH's] repurchase obligations respecting the loans in Section 2.03(a), and the subsequent references to [GEMH's] repurchase obligations in Section 2.03(c)."  The January 2014 Opinion concluded that "[f]or the purposes of the instant motion," PSA § 2.03(a) was ambiguous and "[t]he Court is thus unable to resolve as a matter of law whether [PSA § 2.03(a)] limits [the Trustee's] remedy for breach of these [R&Ws] to WMC alone, especially in light of the other transaction documents and PSA provisions."

In the instant motion for summary judgment, GEMH again argues that the PSA unambiguously precludes the Trustee's claims against GEMH based on breaches of the Originator's R&Ws, and

also argues that, even if the PSA is ambiguous, all extrinsic evidence supports GEMH's interpretation of PSA § 2.03(a).  GEMH cites to the deposition testimony of a number of BoNY employees purporting to show BoNY's understanding of the PSA at the time it was executed, and attaches repurchase request letters to show that BoNY's ordinary practice was to send repurchase requests to WMC only.  In opposition, the Trustee attaches repurchase request letters that were sent to both GEMH and WMC, and the Prospectus Supplement.

## DISCUSSION

Summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party.  Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008).

Under New York law, "agreements are to be construed in accordance with the parties' intent," "the best evidence" of which "is what they say in their writing."  In re World Trade Ctr. Disaster Site Litig., 754 F.3d 114, 122 (2d Cir. 2014) (citation omitted).  "[A]ll writings which form part of a single

transaction and are designed to effectuate the same purpose
[must] be read together, even though they . . . were not all
between the same parties." This Is Me, Inc. v. Taylor, 157 F.3d
139, 143 (2d Cir. 1998) (citation omitted).  "The court should
read the integrated contract as a whole to ensure that undue
emphasis is not placed upon particular words and phrases, and to
safeguard against adopting an interpretation that would render
any individual provision superfluous." Law Debenture Trust Co.
of New York v. Maverick Tube Corp., 595 F.3d 458, 468 (2d Cir.
2010) (citation omitted).

     "A contract is unambiguous when the contractual language
has a definite and precise meaning about which there is no
reasonable basis for a difference of opinion." Keiler v.
Harlequin Enterprises Ltd., 751 F.3d 64, 69 (2d Cir. 2014).  "By
contrast, ambiguity exists where a contract's term could
objectively suggest more than one meaning to one familiar with
the customs and terminology of the particular trade or
business." Id.  "Whether a contract is ambiguous is a question
of law." Id.

     If a contract is found ambiguous and "the intent of the
parties cannot be determined from the contractual language
itself, the ambiguity presents a question of fact" to be
resolved at trial. Hoyt v. Andreucci, 433 F.3d 320, 331 (2d
Cir. 2006).  If a contract is unambiguous, by contrast, its

meaning is "a question of law for the court to decide."  <u>JA</u>
<u>Apparel Corp. v. Abboud</u>, 568 F.3d 390, 397 (2d Cir. 2009).
"Although a determination that a contract is ambiguous
ordinarily requires denial of summary judgment, the court may
nonetheless grant summary judgment where the extrinsic evidence
illuminating the parties' intended meaning of the contract is so
one-sided that no reasonable person could decide to the
contrary."  <u>New York Marine & Gen. Ins. Co. v. Lafarge N. Am.,</u>
<u>Inc.</u>, 599 F.3d 102, 115 (2d Cir. 2010) (citation omitted).
"Similarly, summary judgment may be granted despite any
ambiguities in the contract where there is no extrinsic evidence
that would support a resolution of the ambiguities in favor of
the nonmoving party's case."  <u>Id.</u> (citation omitted).

　　　　GEMH's motion for summary judgment presents essentially two
legal questions: first, whether PSA § 2.03(a) unambiguously
limits the Trustee's remedies to repurchase by WMC; and second,
if PSA § 2.03(a) is ambiguous, whether GEMH has met its burden
in showing that no reasonable person could reject GEMH's
interpretation of the PSA.  Each will be addressed in turn.

**I. PSA § 2.03(a) Is Ambiguous.**

　　　　GEMH identifies one sentence in PSA § 2.03(a) as the
critical language limiting the Trustee's remedies: "It is
understood and agreed that <u>the obligation of [WMC]</u> to cure or to
repurchase (or to substitute for) any Mortgage Loan [that

breaches the R&Ws] . . . <u>shall constitute the sole remedy respecting such . . . breach</u> available to the Trustee on behalf of the Certificateholders."  (Emphasis added.) ("Key Sentence") GEMH asserts that the Key Sentence is properly interpreted as "unambiguously" limiting the Trustee's remedies for breaches of the R&Ws contained in the Originator MLPA to repurchase by WMC. The question of whether PSA § 2.03(a) is ambiguous, however, has already been addressed in this action, and the Court will not revisit the issue.  As the January 2014 Opinion determined, PSA § 2.03(a) -- when placed in the context of the entire PSA and transaction as a whole -- is ambiguous.

## II. GEMH Has Not Met Its Burden for Summary Judgment.

Turning to GEMH's second argument, GEMH has not submitted sufficient evidence to meet the exacting standard imposed on the interpretation of an ambiguous contract through summary judgment.  Seller MLPA § 7(a) imposes the obligation on GEMH to repurchase loans that breach WMC's R&Ws.  Under ordinary precepts of contract interpretation, the negation of an express obligation contained in a contract should be clear.  The Key Sentence in PSA § 2.03(a) does not provide that clarity and neither does any of the extrinsic on which GEMH relies.

Moreover, GEMH's interpretation of the Key Sentence fails to accomplish a basic tenet of contract interpretation: to give independent force and effect to each provision of the three

critical documents responsible for placing the loans into the RMBS trust.  Interpreting PSA § 2.03(a) to preclude a repurchase remedy against GEMH fails to give independent force and effect to not only Seller MLPA § 7(a) (where GEMH explicitly undertook an obligation to repurchase loans that breach WMC's R&Ws), but also the title of PSA § 2.03 (which is "Repurchase or Substitution of Mortgage Loans by [WMC], [GEMH] or the Depositor"), and PSA § 2.03(c) (which describes GEMH's repurchase obligations).  It is also in tension with the descriptions in the Prospectus of GEMH's duties as the mortgage loan seller.

A more holistic reading of PSA § 2.03(a) that gives force and effect to all provisions contained in the three transaction documents is available.  Section 2.03(a) addresses the mechanics of managing the repurchase of the loan when the Originator's R&Ws have been breached.  It acknowledges that a breach of those R&Ws may trigger a repurchase of the loan by either GEMH or WMC. It then explains that the purchase price shall be paid into a "Collection Account" and that the loan file will be released to WMC.  It adds that, in lieu of a repurchase by GEMH or WMC, the action must be for specific performance and not damages.  It is only after the details of the repurchase process are set out that the Key Sentence appears.  It indicates that "the obligation of WMC" (in the event that its R&Ws are breached) is

limited to the duties to cure, repurchase, or substitute.  The sentence thus serves to underscore in the PSA, the only contract to which the Trustee is a party, what was already stated the Originator MLPA: that, if an action is pursued against WMC, the action must be for specific performance and not damages.

Because PSA § 2.03(a) is ambiguous and GEMH has failed to meet its burden on summary judgment, the proper interpretation of PSA § 2.03(a) is a question reserved for trial.  It is sufficient at this stage to note that GEMH's interpretation is in direct tension with other provisions in the transaction documents, and an interpretation that provides independent force and effect to each provision is available.

## CONCLUSION

GEMH's March 17 motion for summary judgment is denied.


Dated:    New York, New York
          July 30, 2015


                                        _____
                                                DENISE COTE
                                      United States District Judge